**KEAUKAHA–PANAEWA COMMUNITY ASSOCIATION, et al., Plaintiffs-Appellants,**

v.

**HAWAIIAN HOMES COMMISSION, et al., Defendants-Appellees.**

No. 83–2062.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 16, 1984.

Decided Aug. 14, 1984.

See also, 502 F.Supp. 392.

Ronald Albu, Legal Aid Society of Hawaii, Kaneohe, Hawaii, for plaintiffs-appellants.

John A. Wagner, Hilo, Hawaii, for defendants-appellees.

Before DUNIWAY, SCHROEDER, and NORRIS, Circuit Judges.

SCHROEDER, Circuit Judge.

This is a claim pursuant to 42 U.S.C. § 1983 by a group of native Hawaiians against the Hawaiian Homes Commission, and other agencies and officials, to remedy the loss of approximately 25 acres of the Hawaiian home lands.

In 1921, Congress enacted the Hawaiian Homes Commission Act which mandated that certain lands, designated the Hawaiian home lands, be held in trust for the benefit of native Hawaiians. In 1959, when Hawaii was admitted into the union, section 4 of the Hawaiian Admission Act, Public Law No. 86–3, 73 Stat. 4, 5 (1959), required that the provisions of the Commission Act be incorporated into the constitution of the state. The incorporation was described "as a compact with the United States." The Admission Act reiterated the state's obligation to hold the lands in trust and retained a right of federal government intervention to protect the trust. As we explained in our earlier opinion in this case:

> the Admission Act conveyed the United States' title to the Hawaiian home lands to the state, *id.* at § 5(b), and requires Hawaii to hold these lands "as a public trust ... for the betterment of the conditions of native Hawaiians ... and their use for any other object shall constitute a breach of trust for which suit may be brought by the United States. *Id.* at § 5(f). (footnotes deleted).

*Keaukaha-Panaewa Community Association v. Hawaiian Homes Commission,* 588 F.2d 1216, 1218 (9th Cir.1978) (*Keaukaha* I).

In the early 1970s, the County of Hawaii constructed a flood control project which used approximately twenty-five and one-half acres of the Hawaiian home lands. The Commission agreed to convey at least a part of that land to the County in exchange for equivalent acreage, but no such exchange has occurred.

Plaintiffs filed this action seeking declaratory and injunctive relief to replace the lost acreage, and the district court originally granted relief under both the Commission and Admission Acts. In an earlier appeal, while recognizing that acreage had been lost from the Hawaiian home lands, we held that plaintiffs had no implied right of action to enforce the trust provision of the Admission Act. *Id.* at 1224. We also held that the plaintiffs' claim of violation of the Commission Act was a claim arising under state law. *Id.* at 1227. We reversed the district court's judgment in favor of the plaintiffs.

After the Supreme Court denied certiorari but before the district court had entered any final judgment, plaintiffs obtained leave from the district court to amend their complaint to allege a violation of 42 U.S.C. § 1983 for deprivation under color of state law of a federal right. Their amended complaint was based on the intervening decision in *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). In that case, the plaintiff claimed that state officials had deprived him of federally mandated Social Security benefits. The Supreme Court found a valid section 1983 claim despite the lack of any direct private cause of action under the Social Security Act itself. It held that section 1983 encompasses claims for deprivation of rights created purely by federal statute.

The district court in this case determined that the lack of an implied right of action under the Admission Act precluded a section 1983 cause of action. We disagree and again reverse.

In the earlier appeal, we considered only whether plaintiffs could assert a claim in federal court for direct violation of the Admission Act, a federal statute, and the Commission Act, now, by virtue of the Admission Act, a provision of the Hawaii state constitution. The Admission Act provides expressly that if there is any violation of Hawaii's trust obligations, the United States may sue on behalf of the native

Hawaiians. Pub.L. No. 86–3, § 5(f), 73 Stat. 6 (1959). The key issue in the first appeal was therefore whether there was, in addition, an implied private right of action which would enable the native Hawaiians themselves to enforce the Act in federal court.

We held, applying the four factors enunciated by the United States Supreme Court in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), that there was no implied private right of action. We found that the plaintiffs had satisfied a first element because they demonstrated they were members of the class for which a special benefit had been enacted. We further held, however, that plaintiffs' case foundered on a second element, one of Congressional intent, for there was no indication of intent, either in the statute or in its history, to create a private cause of action. We reasoned that since Congress did provide for a public cause of action, we could infer under the *expressio unius* principle that Congress did not intend to provide for a private cause of action. *Keaukaha* I, 588 F.2d at 1223–24. By deciding there was no implied private cause of action, however, we did not determine whether a section 1983 cause of action is available to plaintiffs for deprivation of rights guaranteed under the Admission Act.

After our decision in *Keaukaha* I, the Supreme Court in *Maine v. Thiboutot* recognized a 1983 cause of action for state officials' violations of federal statutory requirements. Then, in *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), it defined certain exceptions to the general *Thiboutot* rule. The Court, looking to its earlier decision in *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), held that there were two "exceptions to the application of § 1983 to statutory violations."

(i) whether Congress had foreclosed private enforcement of that statute in the enactment itself, and (ii) whether the statute at issue there was the kind that created enforceable 'rights' under § 1983.

*Middlesex*, 453 U.S. at 19, 101 S.Ct. at 2626.

■ The lack of an implied private right of action under a federal act, in this case the Admission Act, does not by itself dispose of the issue of Congressional intent to foreclose private actions under section 1983. *Thiboutot* itself found a section 1983 claim available to enforce the Social Security Act, which expressly provides only a public remedy, a cut-off of funds, when states offend the provisions. *Thiboutot*, 448 U.S. at 5–6, 100 S.Ct. at 2505; *see also Lynch v. Dukakis*, 719 F.2d 504, 512 (1st Cir.1983) (section 1983 claim available under Social Security Act). Although we declined to decide the issue, this court has stated that an independent analysis would be necessary to determine whether a section 1983 claim would lie under the Federal Insecticide, Fungicide, and Rodenticide Act, which provides a public remedy but no private right of action, 7 U.S.C. § 1361. *Oregon Environmental Council v. Kunzman*, 714 F.2d 901, 903–04 (9th Cir.1983). As we have stated expressly, "there could well be federal rights enforceable under section 1983 which are not enforceable by means of a private right of action under the statute creating them." *Boatowners and Tenants Ass'n, Inc. v. Port of Seattle*, 716 F.2d 669, 674 (9th Cir.1983).

To determine whether Congress intended to foreclose private enforcement under section 1983 we must apply the test enunciated in *Middlesex*. The Supreme Court there called for us to look to whether "the remedial devices provided in a particular Act are sufficiently comprehensive, [that] they may suffice to demonstrate Congressional intent to preclude" a section 1983 remedy, 453 U.S. at 20, 101 S.Ct. at 2626. The question then becomes whether the enforcement devices of the Admission Act are comprehensive enough to signal preclusion of section 1983.

■ In conducting this inquiry, we must keep in mind that there is a presumption that a federal statute creating enforceable rights may be enforced in a section 1983 action. *Pennhurst*, 451 U.S. at 51,

101 S.Ct. at 1557 (White, J. dissenting in part); *Boatowners*, 716 F.2d at 674. To establish an implied cause of action under a federal statute, the plaintiff must show Congressional intent to create a private cause of action; to negate a section 1983 cause of action, a governmental defendant must show that Congress intended the federal statute in question to provide the exclusive remedy. *Boatowners*, 716 F.2d at 674.

In *Middlesex* itself, the Court found an intent to preclude a section 1983 action on the basis of the "unusually elaborate enforcement provisions" in the statutes before it. The provisions included authority of the government agency and the states to seek civil and criminal penalties, the right of any interested person to seek judicial review of agency action, and two separate citizen suit provisions. *Middlesex*, 453 U.S. at 13–14, 101 S.Ct. at 2623. Similarly, in *Department of Education, State of Hawaii v. Katherine D.*, 727 F.2d 809 (9th Cir.1984), this court found that a comprehensive enforcement scheme foreclosed a section 1983 action when the Education For All Handicapped Children Act (EAHCA) established "detailed procedures for administrative and judicial review," and the remedies under that statute were inconsistent with remedies available under section 1983. *Id.* at 820. *Katherine D.* held essentially that a section 1983 action was unavailable only when it would interfere with the statutory enforcement scheme created by Congress. *Id.*

Other circuits have also required a strong government showing of Congressional intent to foreclose alternative remedies before ruling out a section 1983 claim. *See, e.g., Marvin H. v. Austin Independent School District*, 714 F.2d 1348, 1357–58 (5th Cir.1983) (EAHCA, 20 U.S.C. §§ 1401 *et seq.*, provides comprehensive administrative and judicial enforcement system intended to be exclusive); *Polchowski v. Gorris*, 714 F.2d 749, 752 (7th Cir.1983) (the Privacy Act, 5 U.S.C. § 552a, provides exclusive remedy for information disclosure prohibited by Justice Systems Improvement Act, 42 U.S.C. § 3789g); *Powell v. Defore*, 699 F.2d 1078, 1082 (11th Cir. 1983) (EAHCA remedy provided by Congress intended to be exclusive); *McGovern v. Sullins*, 676 F.2d 98, 99 (4th Cir.1982) (detailed statutory procedures of EAHCA intended to be exclusive); *Uniformed Firefighters Ass'n, Local 94, IAFF, AFL–CIO v. City of New York*, 676 F.2d 20, 22 & n. 4 (2nd Cir.1982) (Comprehensive Employment and Training Act's, 29 U.S.C. §§ 801 *et seq.*, administrative and judicial review scheme provides exclusive remedy).

In the present case, Congress has not provided a comprehensive enforcement scheme which includes any private administrative or judicial remedy. It has provided only a single, public remedy by reserving a right to sue in the federal government. We therefore conclude that the Admission Act does not contain a sufficiently comprehensive enforcement scheme to foreclose a section 1983 remedy. Thus, the Admission Act meets the first requirement of the *Middlesex* test.

There remains a question whether the second of the *Pennhurst-Middlesex* requirements is met, i.e. whether the Admission Act created a federal "right" enforceable under section 1983. The first Supreme Court *Pennhurst* decision implied that a right is created when Congress mandates, rather than merely encourages, a specified entitlement. 451 U.S. at 20, 101 S.Ct. at 1541. The Admission Act clearly mandates establishment of a trust for the betterment of native Hawaiians. These plaintiffs are members of the class in whose interest the trust was created. *Keaukaha I*, 588 F.2d at 1223. The Admission Act provides for enforcement by the federal government. § 5(f), 73 Stat. 6.

The defendants do not seriously contend that plaintiffs have no enforceable rights. Rather, they argue that any enforceable right under the Admission Act is a state rather than a federal right because the Admission Act effectively gave over to the state responsibility to administer the home lands. They rely on the Supreme Court's more recent decision in *Pennhurst State School & Hospital v. Halderman*,

— U.S. ——, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), in which the Supreme Court held that section 1983 was not available to a plaintiff seeking to vindicate rights created by state law. *Id.* 104 S.Ct. at 909–11. The weakness in defendants' position is that here, unlike in *Pennhurst,* the right in question is specifically protected by an Act of Congress, the Admission Act, § 5(f), 73 Stat. 6. While the management and disposition of the home lands was given over to the state of Hawaii with the incorporation of the Commission Act into the state constitution, the trust obligation is rooted in federal law, and power to enforce that obligation is contained in federal law, *see Keaukaha* I, 588 F.2d at 1218. Congress imposed the trust obligation as a condition of statehood and as a "compact with the United States." § 4, 73 Stat. 4. In *Pennhurst,* the right relied on was created completely by state law and only by state law. *Pennhurst,* 104 S.Ct. at 905. Defendants also suggest this suit is brought nominally against state officials, but is in fact for damages against the state itself. *See Pennhurst,* 104 S.Ct. at 908–09. Petitioners, however, seek declaratory and injunctive relief; they do not ask damages from the state.

We therefore hold that under *United States v. Thiboutot,* as read in the light of the subsequent Supreme Court decisions in *Middlesex* and *Pennhurst,* the plaintiffs have stated a federal cause of action under 42 U.S.C. § 1983.

Reversed.