764 F.2d 623
 Doctor Nui Loa PRICE, a.k.a. Maui Loa, individually and in
his capacity as ancestral chief of the Hou
Hawaiians, and Kamuela Price, etc., Plaintiffs,
and
Hou Hawaiians, a Native Hawaii tribe, Plaintiffs/Appellants,
v.
STATE OF HAWAII, State of Hawaii, Department of
Transportation, a division of the State of Hawaii, State of
Hawaii Department of Budget and Finance, division of the
State of Hawaii, and George Ariyoshi, in his capacity as
Governor of the State of Hawaii, Defendants/Appellees.
 No. 84-2444.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 4, 1985.
Decided June 25, 1985.
 
 Joseph D. Gebhardt, William A. Dobrovir, Dobrovir & Gebhardt, Washington, D.C., Paul McCarthy, Honolulu, Hawaii, for plaintiffs-appellants.
 Charlotte Libman, Honolulu, Hawaii, for defendants-appellees.
 Appeal from the United States District Court for the District of Hawaii.
 Before FARRIS, PREGERSON, and BEEZER, Circuit Judges.
 FARRIS, Circuit Judge:
 A native Hawaiian tribal body seeks to compel the State of Hawaii to apply the proceeds from a congressionally created land trust to finance the distribution of land for the benefit of native Hawaiians. The Hou Hawaiian tribe appeals the judgment of the U.S. district court for Hawaii, Fong, J., which dismissed their complaint for lack of federal subject matter jurisdiction.
 
 
 1
 In 1920, Congress created the Hawaiian Home Lands Trust to provide lands for the use and benefit of native Hawaiian people of at least 50 percent native blood. See Hawaiian Homes Commission Act of 1920, Pub.L. No. 67-34, 42 Stat. 108 et seq. (1921). The Home Lands Trust was incorporated into the Constitution of the State of Hawaii when Congress admitted the State into the Union in 1959. See Hawaii Admission Act, P.L. No. 86-3, Sec. 4, 73 Stat. 4, 5 (1959).
 
 
 2
 Under section 5(f) of the Admission Act, the United States conveyed the bulk of its Hawaiian land holdings to the newly formed State, with the instruction that the lands and all property subsequently conveyed by the United States to the State be held by the State as a public trust. The lands which had already been reserved for disposition by the Hawaiian Homes Commission under the 1920 Act were included in the section 5(f) trust.
 
 
 3
 Proceeds from the section 5(f) trust are to be devoted to "one or more" of five statutory purposes, one of which is "for the betterment of the conditions of native Hawaiians." 73 Stat. 6. Section 5(f) places no other express limitations on the State's use of the trust fund proceeds.
 
 
 4
 The Hou Hawaiians sued in federal district court alleging that the State of Hawaii had breached its trust obligations to the United States and to the native Hawaiians by failing to expend any section 5(f) funds "for the betterment of the conditions of native Hawaiians." The Hou also alleged that the State was spending section 5(f) funds on "the maintenance of the State of Hawaii governmental structure," a purpose not authorized by the statute. The Hou requested an accounting of all section 5(f) lands; "just and fair" compensation for the State's prior neglect and a "just and fair portion" of future revenues produced by section 5(f) lands; and the use of the award to secure matching federal funds to implement the Hawaiian Homes Commission Act.
 
 
 5
 The district court granted the State's motion to dismiss, on the ground that our decision in Keaukaha-Panaewa Community Association v. Hawaiian Homes Commission, 588 F.2d 1216 (9th Cir.1978), cert. denied, 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979) ("Keaukaha I "), compelled a finding that the district court lacked subject matter jurisdiction over the Hous' suit.
 
 
 6
 Following the dismissal, the United States Secretary of the Interior notified the Hou that it would not intervene in the action at this point. The district court subsequently denied the Hous' Motion for Reconsideration, rejecting the Hous' argument that Keaukaha-Panaewa Community Association v. Hawaiian Homes Commission, 739 F.2d 1467 (9th Cir.1984) ("Keaukaha II "), affected the jurisdictional issue. The Hou timely appeal; we have jurisdiction under 28 U.S.C. Sec. 1291.
 
 
 7
 I. Do the Hou qualify for Sec. 1362 jurisdiction?
 
 
 8
 In both their Opening Brief and extensive supplemental briefing submitted at our request, the Hou contend that they are an "Indian tribe or band with a governing body duly recognized by the Secretary of the Interior," 28 U.S.C. Sec. 1362, and hence may bring this suit under Sec. 1362. Because neither the Hou nor their governing body have been "duly recognized" by the Secretary, they do not qualify for Sec. 1362 jurisdiction even if we assume that they are an "Indian tribe or band."
 
 
 9
 A. Statutes governing tribal recognition.
 
 
 10
 No statute explicitly details the procedure by which a tribe may become "duly recognized by the Secretary" for purposes of establishing Sec. 1362 jurisdiction. We note, however, that the Secretary must approve the organization or incorporation of a tribe. If the Hou had been formally organized or incorporated as a tribe, they could thus argue that they had been "duly recognized."
 
 
 11
 The statutes governing the formal organization and incorporation of an Indian tribe, see 25 U.S.C. Secs. 476-477, explicitly do not apply to "any of the Territories, colonies, or insular possessions of the United States [except for] the Territory of Alaska." 25 U.S.C. Sec. 473. In 1934, when Sec. 473 was enacted, Hawaii was such a territory. Therefore, Congress did not originally intend the statutes governing the organization of new Indian tribes to apply to aboriginal groups in Hawaii.
 
 
 12
 Even if we assume that Secs. 476-477 do apply to Hawaii today because it is now a State, the Hou have neither 1) adopted a constitution and bylaws ratified by majority vote of the adult members of the tribe and approved by the Secretary of the Interior, as required by Sec. 476, nor 2) received a charter of incorporation, pursuant to Sec. 477. Therefore, neither provision provides support for a claim of "recognition by the Secretary of the Interior."
 
 
 13
 B. Regulations governing tribal recognition.
 
 
 14
 Nor can the Hou claim "recognition" under the regulations by which the Interior Department's Bureau of Indian Affairs acknowledges tribal existence. See 25 C.F.R. Part 83 (1984). The regulations establish tribal existence as "a prerequisite to the protection, services, and benefits from the Federal Government available to Indian tribes. Such acknowledgment shall also mean that the tribe is entitled to the immunities and privileges available to other federally acknowledged Indian tribes...." 25 C.F.R. Sec. 83.2. However, the regulations are explicitly limited to "only those American Indian groups indigenous to the continental United States...." 25 C.F.R. Sec. 83.3(a). The Hou Hawaiians acknowledge that they have not been "recognized" under these regulations.
 
 
 15
 C. Factors for determining tribal recognition.
 
 
 16
 Although no statute or regulation governs recognition of the Hou for purposes of establishing Sec. 1362 jurisdiction, we conclude that the same factors which govern eligibility for federal benefits and "immunities and privileges," see 25 C.F.R. Sec. 83.7, also provide some guidance for the jurisdictional inquiry. These factors, however, do not demonstrate that the Hou or their "governing body" have been "duly recognized" for Sec. 1362 purposes.
 
 
 17
 1. Historical continuity.
 
 
 18
 We first examine whether the group petitioning for recognition "has been identified from historical times until the present on a substantially continuous basis, as 'American Indian,' or 'aboriginal.' " 25 C.F.R. Sec. 83.7(a). The importance of a tribe's longstanding existence is underscored by the regulations' exclusion of "associations, organizations, corporations or groups of any character, formed in recent times," 25 C.F.R. Sec. 83.3(c), from eligibility for Bureau of Indian Affairs benefits.
 
 
 19
 Although native Hawaiians in general may be able to assert a longstanding aboriginal history, the issue before us is whether the particular subgroup seeking recognition--the Hou Hawaiians--can establish that they are a longstanding aboriginal sovereign rather than a recently formed association. To allow any group of persons to "bootstrap" themselves into formal "tribal" status--thereby obtaining the federal economic and legal benefits attendant upon tribal status--simply because they are all members of a larger aboriginal ethnic body would be to ignore the concept of "tribe" as a distinct sovereignty set apart by historical and ethnological boundaries. Cf. F. Cohen, Handbook of Federal Indian Law 5 & n. 17, 229 (1982). Because the Hou ohana was founded in 1974, it does not satisfy the historical requirement for tribal status implicit in Sec. 83.7(a).
 
 
 20
 2. Longstanding tribal political authority.
 
 
 21
 The BIA regulations also consider whether "the petitioner has maintained tribal political influence or other authority over its members as an autonomous entity throughout history until the present." 25 C.F.R. Sec. 83.7(c). The Hou have alleged no facts indicating longstanding actual political authority over its members. To contrary effect, the Hou have submitted "Minutes of a General Meeting of the Elder Council" that indicate that their Chief and Elder Council were first elected on January 27, 1985. This recent election was apparently prompted by the Department of Health and Human Services' request that the Hou formalize their political trappings in order for them to obtain Health and Human Services' benefits.
 
 
 22
 3. Other factors considered in BIA regulations.
 
 
 23
 The Hou have not alleged that "a substantial portion of the petitioning group inhabits a specific area or lives in a community viewed as American Indian and distinct from other populations in the area...." 25 C.F.R. Sec. 83.7(b). Nor have they alleged that their members obey certain formal "procedures through which the group currently governs its affairs and its members," 25 C.F.R. Sec. 83.7(d).
 
 
 24
 D. Non-statutory standards for determining tribal recognition.
 
 
 25
 Apart from the BIA regulations, we are also guided by a 1974 letter from the Commissioner of Indian Affairs to the Chairman of the Senate Committee on Interior and Insular Affairs, in which the BIA reviewed its policies of recognizing Indian tribes over the previous twenty years. The letter describes five factors that the BIA used prior to the 1978 promulgation of the regulations discussed above, see 25 C.F.R. Part 83, in determining eligibility for BIA benefits.
 
 
 26
 The Hou fail to satisfy at least four of these five factors. The Hou 1) have not had treaty relations with the United States; 2) have not been denominated a tribe by act of Congress or Executive order; 3) have not been treated as a tribe by other Indian tribes;[1] and 4) have not demonstrated that the tribe exercises political authority over its members. It is unclear from the record whether the Hou share collective rights in tribal lands or funds, the fifth factor employed by the BIA.
 
 
 27
 In summary, under both the BIA's current regulations for determining eligibility for federal benefits and "privileges and immunities," see 25 C.F.R. Sec. 83.7, and the BIA's pre-regulation standard for recognizing a tribe, the Hou fail to demonstrate eligibility for recognition. In the absence of explicit governing statutes or regulations, we will not intrude on the traditionally executive or legislative prerogative of recognizing a tribe's existence. See United States v. Sandoval, 231 U.S. 28, 46, 34 S.Ct. 1, 5, 58 L.Ed. 107 (1913) (recognition of tribe is "to be determined by Congress, and not by the courts"); United States v. Holliday, 70 U.S. (3 Wall.) 407, 419, 18 L.Ed. 182 (1865); F. Cohen, Handbook of Federal Indian Law 4-5 (1982). We therefore hold that the Hou do not qualify for Sec. 1362 jurisdiction.
 
 
 28
 II. Federal question jurisdiction.
 
 
 29
 The Hou also assert jurisdiction under 28 U.S.C. Sec. 1331. "For this case to be within the purview of Sec. 1331(a), a right or immunity created by the Constitution or laws of the United States must be an essential element of plaintiffs' claim." League to Save Lake Tahoe v. Tahoe Regional Planning Agency, 507 F.2d 517, 519 (9th Cir.1974), cert. denied, 420 U.S. 974, 95 S.Ct. 1398, 43 L.Ed.2d 654 (1975).
 
 
 30
 We have recently held that Sec. 5(f) of the Admission Act creates a federal "right" enforceable under 42 U.S.C. Sec. 1983. Keaukaha II, 739 F.2d at 1472. The Act's trust obligation is "rooted in federal law, and power to enforce that obligation is contained in federal law, see Keaukaha I, 588 F.2d at 1218. Congress imposed the trust obligation as a condition of statehood and as a 'compact with the United States.' Sec. 4, 73 Stat. 4." Keaukaha II, 739 F.2d at 1472. Under Keaukaha II, the Hou have properly invoked federal question jurisdiction.
 
 
 31
 The Hous' Sec. 1331 jurisdiction alternatively rests on our holding in Keaukaha II that Sec. 5(f) of the Admission Act imposes a trust obligation that constitutes a "compact with the United States." See 739 F.2d at 1472; but cf. Keaukaha I, 588 F.2d at 1227 n. 12 (the Commission Act has not been incorporated as a federal-state compact). Unlike typical provisions of state law, this trust obligation is expressly protected from any amendments by the State legislature unless the United States has consented to those amendments. Sec. 4, 73 Stat. 5; Sec. 15, 73 Stat. 11. The terms of this federal-state compact, which has been recently reaffirmed by the Hawaii Supreme Court, see Ahuna v. Department of Hawaiian Home Lands, 64 Hawaii 327, 640 P.2d 1161, 1168 (1982), have been set forth in the plain language of the Hawaii State Constitution. See Hawaii Const., art. XII, Sec. 2 (1978).
 
 
 32
 "[A] case involving the construction of an interstate compact which requires a judicial determination of the nature and scope of obligations set forth therein 'arises' under the 'laws' of the United States within the meaning of Sec. 1331(a)." League to Save Lake Tahoe v. Tahoe Regional Planning Agency, 507 F.2d at 522 (emphasis added) (footnote omitted); see also Petty v. Tennessee-Missouri Bridge Comm'n, 359 U.S. 275, 278, 79 S.Ct. 785, 788, 3 L.Ed.2d 804 (1959); League to Save Lake Tahoe v. B.J.K. Corporation, 547 F.2d 1072, 1073 (9th Cir.1976); Comment, Federal Question Jurisdiction to Interpret Interstate Compacts, 64 Geo.L.J. 87 (1975). Because a compact between two states "deriv[es] its authority from powers conferred upon Congress," Jacobson v. Tahoe Regional Planning Agency, 566 F.2d 1353, 1359 (9th Cir.1977), aff'd in part, rev'd in part on other grounds sub nom. Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979), and has been arrived at only through the consent of Congress, see U.S. Const., art. 1, Sec. 10 cl. 3, the enforcement of an interstate compact may properly be sought in federal court. 566 F.2d at 1358 (citing League to Save Tahoe, 507 F.2d at 523 & n. 13).
 
 
 33
 Congress' role in the formation of a compact between the United States and a State is at least as great as Congress' role in approving a compact between two States. In addition, federal law is "an essential element" of a suit that charges a violation of a compact incorporating "the spirit of the Hawaiian Homes Commission Act looking to the continuance of the Hawaiian homes projects." Hawaii Const., art. XII, Sec. 2; art. XII, Sec. 4; art. XVI, Sec. 7; see Keaukaha II, 739 F.2d at 1472. We therefore hold that the enforcement of the Sec. 5(f) compact presents a federal question under 28 U.S.C. Sec. 1331(a).
 
 
 34
 III. Sovereign immunity.
 
 
 35
 A. Claims against the State.
 
 
 36
 The State of Hawaii argues that it has not waived its sovereign immunity, and hence this suit is barred by the Eleventh Amendment. "In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, we will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.' " Edelman v. Jordan, 415 U.S. 651, 673, 94 S.Ct. 1347, 1360, 39 L.Ed.2d 662 (1974) (quoting Murray v. Wilson Distilling Co., 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)); see Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984) ("Pennhurst II ").
 
 
 37
 Although the text of the Admission Act unmistakably authorizes the United States to bring suit against the State, we find no express language or legislative history proving that the State has lost its sovereign immunity from suit by the Hou. The Hous' claims against the State of Hawaii, its Department of Transportation, and its Department of Budget and Finance are therefore dismissed. See Hoohuli v. Ariyoshi, 741 F.2d 1169, 1173 & n. 5 (9th Cir.1984).
 
 
 38
 B. Claims against George Ariyoshi.
 
 
 39
 The Hou have also named George Ariyoshi, in his capacity as governor of Hawaii, as a defendant in this suit. The Supreme Court has recently reaffirmed that "when a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct, [although] not one that awards retroactive monetary relief." Pennhurst II, 104 S.Ct. at 909 (citing Edelman v. Jordan, 415 U.S. at 666-67, 94 S.Ct. at 1357-58); see Hoohuli v. Ariyoshi, 741 F.2d at 1174. Because the Hou have alleged a violation of the Admission Act and its incorporation of the federal-state compact to preserve "the spirit of the Hawaiian Homes Commission Act," see Hawaii Const., art. XII Sec. 2, they have alleged a violation of federal law, see discussion supra section II; Keaukaha II, 739 F.2d at 1472, and may properly seek prospective injunctive relief in federal court.
 
 
 40
 We reject the argument that all relief, both retroactive and prospective, will ultimately be paid by the State and hence is barred by the Eleventh Amendment. While we agree that the Eleventh Amendment bars a request for retroactive damages, see Pennhurst II, 104 S.Ct. at 911 (citing Edelman, 415 U.S. at 665, 94 S.Ct. at 1356); Hoohuli v. Ariyoshi, 741 F.2d at 1174, we view the effect on the Hawaii State treasury of the requested injunctive relief as "the necessary result of compliance with decrees which by their terms [are] prospective in nature ... [and] an inevitable consequence of the principle announced in Ex parte Young [209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) ]." Edelman, 415 U.S. at 667-68, 677, 94 S.Ct. at 1357-58, 1362 (permitting prospective injunctive relief in a Sec. 1983 action brought by public aid recipients), and discussing Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971) (Eleventh Amendment does not bar federal court from enjoining state officials who were denying welfare benefits to otherwise qualified aliens); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (enjoining termination of welfare payments without prior hearing). We therefore hold that the Hou may properly seek prospective injunctive relief against George Ariyoshi in his capacity as governor. We make no comment on the merits of such an action.
 
 
 41
 IV. Standing.
 
 
 42
 To establish standing, a plaintiff must allege personal injury that is "fairly traceable" to the defendant's conduct and "likely to be redressed by the requested relief." Allen v. Wright, --- U.S. ----, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984) (citing Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982)).
 
 
 43
 The Hou have suffered an economic injury that can be "fairly traced" to the State's decision to fund other purposes than section 5(f)'s "the betterment of the conditions of native Hawaiians." Such an injury is analogous to competitors' injuries in a long line of Supreme Court cases that have upheld standing to challenge regulatory benefits and licenses granted by the government to competitor companies. See e.g., Investment Co. Institute v. Camp, 401 U.S. 617, 91 S.Ct. 1091, 28 L.Ed.2d 367 (1971); Arnold Tours, Inc. v. Camp, 400 U.S. 45, 91 S.Ct. 158, 27 L.Ed.2d 179 (1970) (per curiam); American Trucking Ass'ns, Inc. v. United States, 364 U.S. 1, 80 S.Ct. 1570, 4 L.Ed.2d 1527 (1960); see generally 4K. Davis, Administrative Law Sec. 24:13 (2d Ed.1983). The Hou have "credibly allege[d]" a realistic threat from the future administration of the section 5(f) trust. See Los Angeles v. Lyons, 461 U.S. 95, 107 n. 7, 103 S.Ct. 1660, 1667 n. 7, 75 L.Ed.2d 675 (1983).
 
 
 44
 It is also clear that the Hous' economic injury would be "likely" to be redressed, see Allen v. Wright, 104 S.Ct. at 3325 (citing Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 41, 96 S.Ct. 1917, 1925, 48 L.Ed.2d 450 1976)), if we enjoined Governor Ariyoshi from allowing executive agencies to continue to expend trust funds in the manner alleged by the Hou.
 
 
 45
 Because the Admission Act broadly allows the State to expend trust funds on "one or more" of five statutory purposes, however, the State argues that it has acted well within its discretion in refusing to grant any funds at all to the Hou. Therefore, the State concludes that the Hou have no right to any trust funds, and they cannot claim an "injury in fact" sufficient to satisfy Article III standing requirements.
 
 
 46
 The State's argument would require the Hou to establish a formal legally protected right, rather than an economic interest which has been arguably affected by the State, merely to get into court. Such a "legal interest" test was replaced in the 1970's by the more lenient "injury in fact" test. See Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970).[2] Therefore, for purposes of determining standing, we reject the State's invitation to examine whether the Admission Act gives the Hou a legally protected right to trust funds. We hold that the Hou have standing to seek prospective injunctive relief against Governor Ariyoshi.V. Implied private cause of action.
 
 
 47
 We now consider whether the Hou may bring a private cause of action under the Admission Act.
 
 
 48
 Under the "co-plaintiff" doctrine, Indian tribes may claim a private cause of action when the United States is a trustee and is entitled to sue to protect the tribe's rights. See e.g., Keaukaha I, 588 F.2d at 1224 n. 7; Agua Caliente Band of Mission Indians v. County of Riverside, 442 F.2d 1184, 1186 (9th Cir.1971), cert. denied, 405 U.S. 933, 92 S.Ct. 930, 30 L.Ed.2d 809 (1972); see also Poafpybitty v. Skelly Oil Co., 390 U.S. 365, 366-72, 88 S.Ct. 982, 982-86, 19 L.Ed.2d 1238 (1968). But because the United States is not a formal trustee of the Sec. 5(f) homelands trust, see Keaukaha I, 588 F.2d at 1224 n. 7, and nothing in the legislative history or case interpretation indicates that Congress intended a different result for the Sec. 5(f) ceded land trust at issue here, we hold that the Hou cannot claim a private cause of action under the "co-plaintiff" doctrine. Id.
 
 
 49
 Furthermore, our holding in Keaukaha I that individual Hawaiians do not have an implied cause of action under the Admission Act, see 588 F.2d at 1223-24, applies with equal force to bar the Hou Hawaiians from claiming a cause of action. Although the Hou are members of a "class for whose especial benefit the statute was enacted," Cort v. Ash, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975) (emphasis in original), nothing in the legislative history of the Admission Act indicates that Congress intended native Hawaiian groups, as distinguished from individual Hawaiians whose claims were rejected in Keaukaha I, to enjoy a private cause of action. "Indeed, the rare references in the Committee reports to enforcement of section 5's trust provisions refer exclusively to the public cause of action." Keaukaha I, 588 F.2d at 1223. Because the remaining two elements of the Cort v. Ash test--the general scheme of the Admission Act and the magnitude of the State's concern in this area--have also been decided by Keaukaha I in favor of the State, the Hou cannot claim an implied private cause of action. See id. at 1224.
 
 
 50
 VI. Conclusion.
 
 
 51
 The Hou have not established that they are "duly recognized by the Secretary of the Interior," and hence cannot claim jurisdiction under 28 U.S.C. Sec. 1362. However, both the federal nature of the section 5(f) trust and the state-federal compact that led to its creation support general federal question jurisdiction under 28 U.S.C. Sec. 1331. The Hou have also alleged an "injury-in-fact" sufficient to confer standing.
 
 
 52
 Because the State has not waived its sovereign immunity, we must dismiss the Hous' claims against all parties except George Ariyoshi in his capacity as governor. This claim against Ariyoshi, however, must be dismissed as well because the Hou cannot claim a private cause of action under the Admission Act.[3] The district court's judgment is AFFIRMED.
 
 
 
 [1]
 Although the Hou argue that they have been treated as a tribe by "the larger, federally recognized tribe of the Native Hawaiian people as a whole," the Hou have not shown that the Native Hawaiian people have themselves been "duly recognized" as a tribe
 
 
 [2]
 See also Chayes, Foreword: Public Law Litigation and the Burger Court, 96 Harv.L.Rev. 4, 15 (1982); Note, Analyzing Taxpayer Standing in Terms of General Standing Principles: The Road Not Taken, 63 B.U.L.Rev. 717, 742-43 (1983)
 
 
 [3]
 Because we lack jurisdiction to decide the case, we express no opinion on the merits of a suit to enforce the section 5(f) trust properly brought by the Department of the Interior