**Anthony K. NALIIELUA and Debra A. Naliielua, Plaintiffs,**

v.

**STATE OF HAWAII, et al., Defendants.**

**Civ. No. 90–00063 DAE.**

United States District Court,
D. Hawaii.

May 29, 1990.

---

**14.** The fifty-two week Treasury bill rate on the date of delivery—December 4, 1988—was 8.55%.

Torkildson, Katz, Jossem, Fonseca, Jaffe & Moore, Steven B. Jacobson, Matt A. Tsukazaki, Honolulu, Hawaii, for Bekins Moving & Storage Co. of Hawaii, Inc.

Warren Price, III, Atty. Gen., State of Hawaii, Steven S. Michaels, Deputy Atty. Gen., Honolulu, Hawaii, for State of Hawaii, et al.

Rory Soares Toomey, Honolulu, Hawaii, for plaintiffs.

## ORDER GRANTING DEFENDANT BEKINS MOVING & STORAGE CO.'S MOTION FOR DISMISSAL WITH PREJUDICE, JUDGMENT ON THE PLEADINGS AND ENTRY OF FINAL JUDGMENT

DAVID ALAN EZRA, District Judge.

This matter came on for hearing before this court on May 14, 1990. The court, having carefully reviewed the records and pleadings on file herein, and having heard the oral arguments of counsel, GRANTS defendant's motion.

### BACKGROUND

Plaintiffs Anthony K. Naliielua and Debra A. Naliielua bring this 42 U.S.C. § 1983 action against the State of Hawaii, the Department of Hawaiian Home Lands, the Governor of Hawaii, the Attorney General of Hawaii, various other present or former Hawaii State officials, and Bekins Moving & Storage Co. of Hawaii, Inc. ("Bekins").

Plaintiff Anthony Naliielua ("Anthony") is the natural grandson and adopted son of Gregory Kalahikiola Naliielua, Sr., deceased ("Gregory"). Gregory lived on a leased Hawaiian Home Lands lot in Nanakuli, Hawaii with his second wife, Frances E. Naliielua ("Frances") until his death in December, 1987. Gregory did not designate a successor to his leasehold interest in the event of his death; but did designate Frances, allegedly a non-Hawaiian, as the recipient of the appraised value of their improvements, as allowed by Section 209(a) of the Hawaiian Homes Commission Act, 1920.

A few months after Gregory's death, on February 2, 1988, the First Circuit Court of the State of Hawaii appointed Anthony as special administrator of Gregory's estate

and issued him Letters of Special Administration which he used to remove Frances from the home which she and Gregory shared.[1] By order dated February 12, 1988, the circuit court vacated these letters and issued a writ of possession authorizing the removal of Anthony and his personal belongings from the property to enable Frances to resume possession pending a determination by the Department of Hawaiian Home Lands ("the Department") with respect to the disposition of Gregory's leasehold interest.[2] The writ was issued upon motion by the Department in the probate case, *In the Matter of the Estate of Gregory Kalahikiola Naliielua, Sr.,* Probate No. 88–0061.

Pursuant to the writ of possession issued and made effective on February 12, 1988, defendant Bekins removed plaintiffs' personal property from the deceased's home. As a result of this incident, plaintiffs bring this action against Bekins and several state defendants asserting, among other things, that the Hawaii Homes Commission Act unconstitutionally deprives persons of their equal protection rights under the fourteenth amendment by creating preferences solely based on race. Hence, plaintiffs assert that the acts taken by the Department and Bekins to remove Anthony from Gregory's home violated his constitutional rights.

Defendant Bekins now moves for dismissal with prejudice or judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(b) and (c) asserting that Counts II, IV, V, IX, X, XI, and XII fail to state a claim upon which relief can be granted.

## DISCUSSION

Congress enacted the Hawaii Homes Commission Act, 1920 to set aside certain public lands to be considered Hawaiian home lands to be utilized in the rehabilitation of native Hawaiians. The Hawaiian Admission Act, Pub.L. No. 86–3, 73 Stat. 5 (1959) conveyed responsibility for the administration of the Hawaiian home lands to the State of Hawaii and requires Hawaii to hold these lands "as a public trust ... for the betterment of the conditions of native Hawaiians...." *Id.* at § 5(f). In accordance with § 4 of the Admission Act, the State of Hawaii adopted the Hawaii Homes Commission Act, 1920 as a provision of the state constitution. Hawaii Const. art. XI.

The crux of plaintiffs' complaint is that the Hawaii Homes Commission Act, 1920 ("the Act") violates the fourteenth amendment of the United States Constitution. Plaintiffs argue that the Hawaiian Homes Commission Act confers a benefit on persons solely on the basis of race and therefore is unconstitutional. *See Wygant v. Jackson Board of Education,* 476 U.S. 267, 106 S.Ct. 1842, 90 L.Ed.2d 260 (1986).

### A. *Standard for Granting Dismissal*

■ In considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the court must construe the allegations of the complaint as true and cannot dismiss the complaint "'unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Sun Savings & Loan Association v. Dierdorff,* 825 F.2d 187, 191 (9th Cir.1987) *quoting Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### B. *Standing*

■ Article III requires only that the party be injured by the challenged conduct in order to establish standing. *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). A party may not, however, assert the interests and rights of third parties. *Id.; Halet v. Wend Inv. Co.,* 672 F.2d 1305, 1308 (9th Cir.1982).

The United States Supreme Court has articulated the test for standing as follows:

---

**1.** In his petition to be appointed special administrator, Anthony falsely represented that his appointment was necessary to protect the residence of the decedent because no one was residing there.

**2.** The Department's practice is to allow non-successor widows to retain possession of a deceased's property pending a determination of the disposition of the property.

... whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief.

*Warth*, 95 S.Ct. at 2206.

■ Defendant Bekins contends that plaintiffs, as native Hawaiians,[3] have no standing to challenge the constitutionality of the Hawaiian Homes Commission Act, which was enacted to benefit native Hawaiians. Defendant argues that plaintiffs have alleged no injury which was the result of the alleged unconstitutionality of the Act.

Considering the allegations of plaintiffs' complaint as true, as this court must on a motion to dismiss, plaintiffs suffered some injury as a result of action taken by the Department pursuant to its authority under the Act. However, while plaintiffs may have been injured, their injury clearly did not result from the alleged unconstitutionality of the Act.

Plaintiffs' only contention is that the Act is unconstitutional because it confers benefits based solely upon race. Plaintiffs, however, were not removed from the subject property because of their race. Plaintiffs were removed from the property because they obtained possession of it pursuant to improperly issued letters of special administration. Therefore, the injury they assert is in no way related to the basis of their claim, that the Hawaiian Homes Commission Act unconstitutionally deprives non-Hawaiians of equal protection of the laws. *See Valley Forge Christian College v. Americans United For Separation of Church and State*, 454 U.S. 464, 485, 102 S.Ct. 752, 765, 70 L.Ed.2d 700 (1982).

Furthermore, the injury plaintiffs allege is not, as they contend, likely to be redressed by a favorable decision. *See Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). Assuming this court were to hold the Act unconstitutional, the subject leasehold would not automatically pass to plaintiff, as son of the deceased. Frances, Gregory's surviving spouse and current possessor of his homestead, would be entitled to one half of his estate. *See* Haw.Rev.Stat. § 560:2–102.

In challenging the constitutionality of the Act on equal protection grounds, this native Hawaiian plaintiff and his wife are clearly asserting the rights of third-parties, i.e., non-Hawaiians who might be injured by being denied access to this property. Therefore, the court finds that plaintiffs lack standing to challenge the constitutionality of the Act. *Warth*, 95 S.Ct. at 2206. The court finds, however, further grounds for dismissing plaintiffs' complaint.

## C. *The Constitutionality of the Hawaiian Homes Commission Act*

■ Assuming that plaintiffs have standing, as a result of their alleged injury related to being removed from Hawaiian home lands, this court finds that the core of plaintiffs' complaint, the constitutionality of the Hawaiian Homes Commission Act, lacks merit.

The United States Supreme Court has held that legislation which grants preference toward Indians is not invidious racial discrimination based on "Congress' unique obligation" toward the Indians. *Morton v. Mancari*, 417 U.S. 535, 94 S.Ct. 2474, 2483–5, 41 L.Ed.2d 290 (1974); *Washington v. Confederated Bands and Tribes*, 439 U.S. 463, 99 S.Ct. 740, 761, 58 L.Ed.2d 740 (1979).

Plaintiffs argue that the plethora of authority relating to Indian legislation does not apply to native Hawaiians because they are not "Indians." Although Hawaiians are not identical to the American Indians whose lands are protected by the Bureau of

---

**3.** Anthony, as a native Hawaiian, clearly lacks standing to assert the rights of non-Hawaiians. At the hearing on this motion, however, plaintiff Debra Naliielua, Anthony's wife, revealed to her counsel that she is in fact less than 50% Hawaiian and therefore, not entitled to benefits under the Act. Nevertheless, she lacks standing to challenge the Act on equal protection grounds because she asserts only that she was denied her husband's right to occupy property, and does not allege that she was injured as a result of the unconstitutionality of the Act, as discussed *supra*.

Indian Affairs, the court finds that for purposes of equal protection analysis, the distinction plaintiffs seek to draw is meritless.

Native Hawaiians are people indigenous to the State of Hawaii, just as American Indians are indigenous to the mainland United States. As the Ninth Circuit Court of Appeals stated in *Pence v. Kleppe,* 529 F.2d 135 (9th Cir.1976), "the word 'Indian' is commonly used in this country to mean 'the aborigines of America.'"

The Hawaii Supreme Court recognized the similarity between native Hawaiians and American Indians in *Ahuna v. Department of Hawaiian Home Lands,* 64 Haw. 327, 339, 640 P.2d 1161 (1982), stating as follows:

> In our opinion, the extent or nature of the trust obligations of the [state] toward beneficiaries such as the appellee may be determined by examining well-settled principles enunciated by the federal courts regarding lands set aside by Congress in trust for the benefit of other native Americans, i.e., American Indians, Eskimos, and Alaska natives.... Congress recently passed a religious freedom act which specifically included native Hawaiians among other American Indians. *See* American Indian Religious Freedom Act, Pub.L. No. 95–341, 92 Stat. 469 (1978) (codified at 42 U.S.C. § 1996 (Supp.III 1979)). Essentially, we are dealing with relationships between the government and aboriginal people. Reason thus dictates that we draw the analogy between native Hawaiian homesteaders and other native Americans.

This court finds applicable the clear body of law surrounding preferences given to American Indians and finds that the United States' commitment to the native people of this state, demonstrated through the Admission Act and the Hawaiian Homes Commission Act, 1920, does not create a suspect classification which offends the constitution.[4]

### D. *Count II of Plaintiffs' Complaint*

■ Count II of plaintiffs' complaint alleges that plaintiffs were deprived of "due process equal protection" because the Writ of Possession under which they were evicted was issued by a Hawaii Circuit Court rather than a Hawaii District Court pursuant to Haw.Rev.Stat. § 666–6.[5]

In order to assert a cognizable claim under § 1983 plaintiffs must allege that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes. *Gibson v. United States,* 781 F.2d 1334, 1338 (9th Cir.1986), *cert. denied,* 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987).

First, even if the writ was issued in violation of a Hawaii statute, this alone would not give rise to a claim under § 1983. *See Williams v. Treen,* 671 F.2d 892, 900 (5th Cir.1982); *Bills v. Henderson,* 631 F.2d 1287 (6th Cir.1980). The issuance of the writ of possession by the circuit court, as opposed to the district court, did not deprive plaintiffs of any due process rights. The procedures before the circuit court provided plaintiffs with notice and a hearing prior to the issuance of the writ. Plaintiffs do not allege that they were deprived of any procedural protections guaranteed by the United States Constitution.

Furthermore, the First Circuit Court's issuance of the writ of possession was not improper under Hawaii law. The writ was issued in a probate proceeding initiated by

---

4. The court notes that the state, in administering the Hawaiian Homes Commission Act, is implementing an obligation which "is rooted in federal law, and the power to enforce that obligation is contained in federal law." *Keaukaha-Panaewa Community Ass'n v. Hawaiian Homes Comm'n,* 739 F.2d 1467 (9th Cir.1984). Accordingly, although the state does not have the same unique relationship with the native Hawaiians that the United States enjoys, the state may exercise jurisdiction over them in response to an explicit federal measure designed to confer

such responsibility. *Washington v. Confederated Bands and Tribes,* 99 S.Ct. at 761.

5. Haw.Rev.Stat. § 666–6 provides as follows:

> In the case of summary possession proceedings, the person entitled to the possession of the premises shall bring and prosecute the person's action in the district court of the circuit wherein the lands and premises in question are situated.

plaintiff himself in the First Circuit Court. The circuit court clearly has jurisdiction over probate proceedings pursuant to Haw. Rev.Stat. §§ 603–21.6; 603–21.7(a)(1). In addition, Haw.Rev.Stat. § 603–21.9 provides that the circuit courts shall have power "to make and issue all orders and writs necessary or appropriate in the aid of their original or appellate jurisdiction" and

> to make and award such judgments, decrees, orders, and mandates, issue such executions and other processes, and do such other acts and take such other steps as may be necessary to carry into full effect the powers which are or shall be given to them by law or for the promotion of justice in matters pending before them.

The circuit court issued the subject writ of possession in conjunction with its order vacating the special letters of administration it had previously issued to plaintiff Anthony. The circuit court clearly had jurisdiction to cure its own order. The circuit court determined that it did not have jurisdiction in the first instance to issue the special letters of administration. The writ of possession, in essence, was necessary to carry out the full effect of the court's order to vacate its previous order which allowed Anthony to oust his stepmother from the subject property. This was unquestionably within the powers conferred to the circuit court by statute. Haw. Rev.Stat. § 603–21.9

Accordingly, the court finds that Count II of plaintiffs' complaint fails to state a claim upon which relief can be granted and GRANTS defendant's motion to dismiss.

### E. *Plaintiffs' Other Claims*

 Having determined that plaintiffs lack standing to challenge the constitutionality of the Hawaiian Homes Commission Act, the remainder of plaintiffs claims against Bekins, which are based on the alleged unconstitutionality of the Act, must be dismissed for failure to state a cause of action.

 Assuming for purposes of this motion that defendant Bekins acted negligently "under the color of state law," a mere negligent deprivation of property does not violate the due process clause of the constitution. *Mow by Mow v. Cheeseborough,* 696 F.Supp. 1360, 1363–64 (D.Haw.1988); *see also Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 3204, 82 L.Ed.2d 393 (1984). Therefore, plaintiffs' cause of action for negligence in handling their property does not state a claim under § 1983. *Id.*

 Similarly, plaintiffs' claim for negligent and/or intentional infliction of emotional distress does not assert the violation of a federal right and fails to state a claim under § 1983. While damages for emotional distress may be available under § 1983 once a violation has been established, the claim itself cannot form the basis for a § 1983 claim.

 Finally, plaintiffs have failed to state a conspiracy claim under § 1983. Plaintiffs allege only that the defendants "entered into a conspiracy to violate the rights" of plaintiffs and that this conspiracy "did in fact violate the rights" of plaintiffs. These conclusory allegations of conspiracy, absent actual deprivation of a federal right, do not state a claim under § 1983. *Woodrum v. Woodward County,* 866 F.2d 1121, 1126–1127 (9th Cir.1989).

Accordingly, the court GRANTS defendant's motion to dismiss with respect to plaintiffs' remaining claims.

### F. *Final Judgment Under Rule 54(b)*

Pursuant to Fed.R.Civ.P. 54(b) the court may direct the entry of final judgment as to one party "upon an express determination that there is no just reason for delay."

In the instant case, the court has dismissed all claims against the only private defendant, Bekins. The court finds that there is no just reason for delay in entering final judgment as to defendant Bekins and hereby directs the clerk of the court to enter judgment in their favor.

IT IS SO ORDERED.