45 F.3d 333
 Lambert Kalani HAN; Christina K. Aki; Samuel L. Gomes;
Patrick L. Kahawaioka'a; Harold Uhane Jime; and
Uhane-Hemolele, Plaintiffs-Appellants,
v.
UNITED STATES DEPARTMENT OF JUSTICE; Janet Reno, Attorney
General of the United States; Robert Marks, Attorney
General of Hawaii; Louella O.W. Albino, individually and in
her capacity as lessee on the Hawaii Homestead Program, et
al., Defendants-Appellees.
 No. 93-15632.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 3, 1994.
Decided Jan. 19, 1995.
 
 Kenneth W. Carlson, Kilauea, HI, for plaintiffs-appellants.
 Ellen M. Athas and J. Carol Williams, U.S. Dept. of Justice, Washington, DC, for defendants-appellees.
 Steven S. Michaels, Deputy Atty. Gen., State of Hawai'i, Honolulu, HI, for defendants-appellees.
 Ward F.N. Fujimoto, Fujiyama, Duffy & Fujiyama, Honolulu, HI, for defendants-appellees.
 Sherry P. Broder, Honolulu, HI, for amicus curiae.
 Carl C. Christensen, Honolulu, HI, for amici curiae.
 Appeal from the United States District Court for the District of Hawaii.
 Before: BROWNING, TROTT, and KLEINFELD, Circuit Judges.
 PER CURIAM:
 
 
 1
 The Hawaiian Homes Commission Act, Pub.L. No. 67-34, 42 Stat. 108 (1921) ("Commission Act"), designated approximately 200,000 acres as "Hawaiian home lands" and created the Hawaiian Homes Commission to manage them. The Commission was authorized to lease small parcels to native Hawaiians for 99 years at nominal rates for agricultural and homestead use. Section 4 of the Hawaii Admission Act, Pub.L. No. 86-3, 73 Stat. 4 (1959) ("Admission Act"), provided, "as a compact with the United States," that the Commission Act would be "adopted as a provision of the Constitution of [Hawaii], ... subject to amendment or repeal only with the consent of the United States." Section 5(b) of the Admission Act transferred title to the home lands to the State of Hawaii. Section 5(f) provided that these lands would "be held by said State as a public trust" for specified purposes, and "their use for any other object shall constitute a breach of trust for which suit may be brought by the United States."[1]
 
 
 2
 With the approval of the Commission, several native Hawaiian lessees of home lands ("the lessee defendants") entered into "third party agreements" permitting agricultural use of their land by persons other than native Hawaiians. Plaintiffs, a group of home land lessees and native Hawaiians waiting to receive leases, filed this suit against the lessee defendants alleging the third party agreements violated the Commission Act and constituted a breach of the trust established by the Admission Act. The State of Hawaii, the Hawaiian Homes Commission, and several state officials ("the state defendants") were joined as defendants under 42 U.S.C. Sec. 1983 for their role in approving the agreements.[2] The United States Department of Justice and the Attorney General of the United States ("the federal defendants") were made defendants because of their failure to bring an enforcement action against the State under section 5(f) of the Admission Act. The district court dismissed the claims against the lessee defendants and federal defendants and granted summary judgment for the state defendants. We affirm.
 
 I. THE FEDERAL DEFENDANTS
 A. Fiduciary Duty
 
 3
 Plaintiffs sought a declaration that the United States owes a fiduciary duty to native Hawaiians to bring suit against the State of Hawaii for the alleged breach of trust arising from the approval of the third party agreements. Plaintiffs do not contend the United States is a formal trustee of the home lands but rather that "there is fair evidence of a Congressional view that the United States has at least some lesser and related fiduciary obligations" and "serves as a type of guardian" of native Hawaiians' interest in the home lands, and that this more limited relationship is sufficient to establish a fiduciary duty to bring suit on behalf of the native Hawaiians.
 
 
 4
 Assuming without deciding that a general trust or "guardianship" relationship exists between the United States and native Hawaiians similar to that between the United States and recognized Indian tribes, the Admission Act does not impose any duty upon the government to bring an enforcement action against the State of Hawaii because "[t]he Act does not unambiguously provide that the United States has undertaken full fiduciary responsibilities as to the management of allotted lands." United States v. Mitchell, 445 U.S. 535, 542, 100 S.Ct. 1349, 1353, 63 L.Ed.2d 607 (1980) (Mitchell I ).[3]
 
 
 5
 The Admission Act transferred ownership of the home lands to the State of Hawaii and provided that the state, not the United States, was to act as trustee. Keaukaha-Panaewa Community Ass'n v. Hawaiian Homes Comm'n, 588 F.2d 1216, 1224 n. 7 (9th Cir.1979) (Keaukaha I ). The United States retained only a limited role--i.e., a right to bring an action for breach of trust. Id. In light of Mitchell, there is no basis for plaintiffs' argument that the United States has a general fiduciary obligation to bring suit against the State for any particular alleged breach of trust.
 
 
 6
 Plaintiffs argue that they have standing to enforce the section 4 compact between the United States and Hawaii as "third party beneficiaries." Assuming without deciding plaintiffs are third party beneficiaries of the compact, and such a claim could properly be asserted against the United States, that claim must still fail because the United States undertook no obligation to bring suit to enforce the trust; section 5(f) provides the United States may bring such an action, not that it must do so.
 
 B. Mandamus
 
 7
 Plaintiffs sought a writ of mandamus to compel the Attorney General to file an enforcement action under the Admission Act. Barron v. Reich, 13 F.3d 1370 (9th Cir.1994), supports the district court's denial of this remedy.
 
 
 8
 In Barron, the plaintiffs sought mandamus to compel the Secretary of Labor to bring an action under the Service Contract Act, 41 U.S.C. Secs. 351 et seq. ("SCA"), against their former employer for overtime and holiday pay allegedly withheld in violation of the SCA. In rejecting the claim we said:
 
 
 9
 Although [the statute] states that employers shall be liable for violations of the SCA, no portion of the statute imposes a duty on the Secretary of Labor to investigate every claim of alleged underpayment which is made by an employee, or to take an employer to task every time a violation is found. Indeed, the section of the SCA which is most closely related to the relief sought by the Barrons states only that under certain circumstances the government "may bring action against" the employer to recover underpayments.... The language used in the enforcement provisions of the SCA is thus a far cry from the mandatory language relied upon by courts which have found that issuance of a writ may be warranted.
 
 
 10
 Id. at 1375 (citations omitted). The situation here is the same. Although the Admission Act states certain actions shall constitute a breach of the section 4 compact or the section 5(f) trust, section 5(f) provides only that the United States may bring suit for such a breach, not that it must.
 
 
 11
 Mandamus may lie if " 'statutory or regulatory standards delimiting the scope or manner in which such discretion can be exercised ... have been ignored or violated,' " Silveyra v. Moschorak, 989 F.2d 1012, 1014-15 (9th Cir.1993) (citation omitted), or if the federal defendants "failed entirely to carry out statutory purposes," Barron, 13 F.3d at 1376. But plaintiffs point to no standard limiting the exercise of the federal defendants' discretion, and none appear on the face of the statute. Moreover, although plaintiffs allege the federal defendants failed to bring suit on plaintiffs' claims, they do not allege a general federal enforcement policy "so inadequate as to be beyond the limits of [the federal defendants'] discretion." Silveyra, 989 F.2d at 1015; see also Barron, 13 F.3d at 1376.[4]
 
 II. THE STATE DEFENDANTS
 A. Eleventh Amendment
 
 12
 The Eleventh Amendment bars suits against state officials in their official capacities when the relief sought is retrospective or compensatory in nature, but does not prohibit suits against state officials based upon federal law when only prospective injunctive relief is sought. Ulaleo v. Paty, 902 F.2d 1395, 1398 (9th Cir.1990) (citing Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)).
 
 
 13
 Although the complaint seeks damages, it also requests that the state defendants be enjoined "from taking any actions inconsistent with their duties." However, "[s]imply asking for injunctive relief ... does not clear the path for a suit." Id. at 1399. "Relief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred.... even though styled as something else." Papasan v. Allain, 478 U.S. 265, 278, 106 S.Ct. 2932, 2940, 92 L.Ed.2d 209 (1986) (citations omitted).
 
 
 14
 In Ulaleo, the Hawaii Board of Land and Natural Resources ("BLNR") exchanged land the State held in trust under section 5(f) of the Admission Act for other land owned by private parties. Alleging a breach of trust, the plaintiffs sought return of the land. We affirmed the dismissal of the action:
 
 
 15
 The complaint is that sometime in the past, the BLNR undertook an action, the land exchange, which allegedly injured the plaintiffs by violating the trust of which the plaintiffs are beneficiaries. There is no allegation that the Board is continuing to violate its trust duties in other ways or that it is likely to do so in the future.... We hold that to grant the requested relief would be a retrospective remedy, as opposed to stopping an ongoing violation of federal law.
 
 
 16
 Ulaleo, 902 F.2d at 1399-1400.
 
 
 17
 The essence of this complaint is the same: sometime in the past, the state defendants breached the trust and violated plaintiffs' rights by approving the third party agreements. There is no allegation that the state defendants are likely to approve third party agreements in the future or that plaintiffs otherwise face a threat of harm from the state defendants' future actions. Because plaintiffs seek only redress for past harms, their suit is barred by the Eleventh Amendment.
 
 B. Qualified Immunity
 
 18
 The Eleventh Amendment does not bar a suit seeking damages against a state official in his individual capacity, Price v. Akaka, 928 F.2d 824, 828 (9th Cir.1991) (Price III ), but a state official sued individually is entitled to qualified immunity if his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Price v. Hawaii, 921 F.2d 950, 959 (9th Cir.1990) (Price II ) (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)).
 
 
 19
 Plaintiffs contend the plain language of section 5(f) of the Admission Act clearly establishes that approval of third party agreements allowing non-native Hawaiians to use the land for agricultural purposes violates the state defendants' duty under the trust to manage the home lands "for the betterment of the conditions of native Hawaiians." However, the law does not clearly establish that the approval of the third party agreements was not "for the betterment of the conditions of native Hawaiians." See Price v. Akaka, 3 F.3d 1220, 1226 (9th Cir.1993) (Price V ) (holding Hawaiian state officials were entitled to qualified immunity because it was not clearly established that expenditure of section 5(f) funds to finance a referendum on changing the definition of "native Hawaiian" constituted a breach of trust).
 
 
 20
 In approving the third party agreements, the state defendants relied upon substantial legal opinion that agreements of this type were lawful. See Adolpho v. Kealoha, Civ. No. 243, slip. op. (Haw.2d Cir. Oct. 18, 1960); Haw.Att'y Gen.Op. No. 55-20 (1955); Haw.Att'y Gen.Op. No. 1168 at 544 (1924).[5] Although in and of themselves these authorities could not establish the legality of the agreements under the Admission Act--an issue we do not reach--the state defendants' good faith reliance upon them is sufficient to support the conclusion that the defendants "reasonably believed" the agreements met the statutory standard. Price V, 3 F.3d at 1226. Therefore, the state defendants are entitled to qualified immunity on this claim. See id.
 
 
 21
 Plaintiffs argue the state defendants' approval of third-party agreements violated clearly established federal law by changing the "qualifications of lessees" without the consent of Congress in violation of section 4 of the Admission Act. However, plaintiffs do not explain how the Commission's approval of these agreements changed the qualifications of lessees.
 
 
 22
 Finally, plaintiffs contend the third party agreements violated section 208(5) of the Commission Act, which forbids native Hawaiian lessees to sublet their interest in a home land tract or to "transfer to, or otherwise hold for the benefit of, any person ... except a native Hawaiian ... or agree so to transfer, or otherwise hold, the [lessee's] interest in the tract." Claims under the Commission Act, which has been expressly incorporated in the Hawaii Constitution, arise exclusively under state law. Keaukaha I, 588 F.2d at 1227. We are barred by the Eleventh Amendment from deciding claims against state officials based solely on state law. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984); Ulaleo, 902 F.2d at 1400.
 
 III. THE LESSEE DEFENDANTS
 
 23
 The district court held plaintiffs did not state a claim against the lessee defendants under section 1983 because they did not plead facts sufficient to establish either state action or deprivation of a federal right.
 
 
 24
 Assuming the complaint sufficiently alleged a deprivation of federally-protected rights, "the complaint alleged no facts to support the claim that the private appellees were acting under color of state law." Price v. Hawaii, 939 F.2d 702, 707 (9th Cir.1991) (Price IV ). At most the complaint alleges the lessee defendants acted under color of state law by seeking the Hawaiian Homes Commission's approval of their third party agreements with non-native Hawaiians. The fact that the lessee defendants sought state approval was not sufficient to show the lessees conspired with state actors or otherwise acted under color of state law. As we said of similar allegations in Price IV:[Plaintiffs] suggest nothing which indicates that the actions of the private [defendants] were in any way imposed by the State or that they exercised some right granted by the State, except to the extent that they sought state court approval of their ... plan before going ahead with it. But [plaintiffs] do not allege that seeking court approval constituted state action, and, of course, "merely resorting to the courts ... does not make a party a co-conspirator or a joint actor with the judge."
 
 
 25
 Id. at 708 (quoting Dennis v. Sparks, 449 U.S. 24, 28, 101 S.Ct. 183, 186-87, 66 L.Ed.2d 185 (1980)).
 
 
 26
 Although the Eleventh Amendment bars consideration on the merits of plaintiffs' claims against the state defendants, plaintiffs may not be without a federal remedy in future cases. If Hawaiian lessees seek state approval of third party agreements in the future, plaintiffs may be able to bring suit to enjoin the state defendants from approving those agreements. Moreover, plaintiffs may be able to present their Commission Act claims to the Hawaii courts. Because plaintiffs sought only retrospective relief from the state defendants, however, the district court's order must be
 
 
 27
 AFFIRMED.
 
 
 
 [1]
 The relevant sections of the Admission Act provide in full:
 Sec. 4. As a compact with the United States relating to the management and disposition of the Hawaiian home lands, the Hawaiian Homes Commission Act, 1920, as amended, shall be adopted as a provision of the Constitution of said State, as provided in section 7, subsection (b) of this Act, subject to amendment or repeal only with the consent of the United States, and in no other manner: Provided, That (1) sections 202, 213, 219, 220, 222, 224, and 225 and other provisions relating to the administration, and paragraph (2) of section 204, sections 206 and 212, and other provisions relating to the powers and duties of officers other than those charged with the administration of the Act, may be amended in the constitution, or in the manner required for State legislation, but the Hawaiian home-loan fund, the Hawaiian home-operating fund, and the Hawaiian home-development fund shall not be reduced or impaired by any such amendment, whether made in the constitution or in the manner required for State legislation, and the encumbrances authorized to be placed on Hawaiian home lands by officers other than those charged with the administration of said Act, shall not be increased, except with the consent of the United States; (2) that any amendment to increase the benefits to lessees of Hawaiian home lands may be made in the constitution, or in the manner required for State legislation, but the qualifications of lessees shall not be changed except with the consent of the United States; and (3) that all proceeds and income from the "available lands", as defined in said Act, shall be used only in carrying out the provisions of said Act.
 Sec. 5. (a) Except as provided in subsection (c) of this section, the State of Hawaii and its political subdivisions; as the case may be, shall succeed to the title of the Territory of Hawaii and its subdivisions in those lands and other properties in which the Territory and its subdivisions now hold title.
 (b) Except as provided in subsection (c) and (d) of this section, the United States grants to the State of Hawaii, effective upon its admission into the Union, the United States' title to all the public lands and other public property within the boundaries of the State of Hawaii, title to which is held by the United States immediately prior to its admission into the Union. The grant hereby made shall be in lieu of any and all grants provided for new States by provisions of law other than this Act, and such grants shall not extend to the State of Hawaii.
 (f) The lands granted to the State of Hawaii by subsection (b) of this section and public lands retained by the United States under subsections (c) and (d) and later conveyed to the State under subsection (e), together with the proceeds from the sale or other disposition of any such lands and the income therefrom, shall be held by said State as a public trust for the support of the public schools and other public educational institutions, for the betterment of the conditions of native Hawaiians, as defined in the Hawaiian Homes Commission Act, 1920, as amended, for the development of farm and home ownership on as widespread a basis as possible for the making of public improvements, and for the provision of lands for public use. Such lands, proceeds, and income shall be managed and disposed of for one or more of the foregoing purposes in such manner as the constitution and laws of said State may provide, and their use for any other object shall constitute a breach of trust for which suit may be brought by the United States....
 
 
 [2]
 The compact established by section 4 and the public trust established by section 5(f) of the Admission Act create federal rights enforceable by private parties in suits under section 1983. See Price v. Hawaii, 764 F.2d 623, 628-29 (9th Cir.1985) (Price I ); Keaukaha-Panaewa Community Ass'n v. Hawaiian Homes Comm'n, 739 F.2d 1467, 1471-72 (9th Cir.1984) (Keaukaha II )
 
 
 [3]
 The Supreme Court later concluded the United States had enforceable duties to the Indian tribe involved in Mitchell because of the "pervasive role" of the Department of the Interior in the management of the timber operations on the reservation. See United States v. Mitchell, 463 U.S. 206, 219, 224-25, 103 S.Ct. 2961, 1050, 1053-54, 77 L.Ed.2d 580 (1983) (Mitchell II ). However, the United States retained no similar pervasive role in the management of the Hawaiian home lands
 
 
 [4]
 Plaintiffs contend that even if the statutory duty is discretionary the court must consider equitable factors in deciding whether mandamus should issue. Plaintiffs are incorrect. A court "may grant the writ only when an official has failed to perform a duty which is clearly ministerial." Barron, 13 F.3d at 1376. Equitable considerations are relevant only when the duty to act is clear and mandamus is otherwise appropriate. See Whitehouse v. Illinois Cent. R. Co., 349 U.S. 366, 373, 75 S.Ct. 845, 850, 99 L.Ed. 1155 (1955)
 
 
 [5]
 Plaintiffs attempt to distinguish these precedents by arguing that previous third party agreements were based on a "planter-buyer fiction" in which the native Hawaiian lessee was designated as the nominal owner of the crops until harvest. However, in the authorities cited, the crucial factor sustaining the legality of the agreements was that they involved no transfer of the native Hawaiians' interest in the land. Indeed, the Hawaii Circuit Court suggested that even if the agreements had given non-native Hawaiians ownership of the growing crops, there would have been no impermissible transfer of an interest in land. See Adolpho, slip op. at 16. Plaintiffs may not rely on this technical distinction to argue that the third party agreements at issue in this case were illegal under clearly established law