**THE HOU HAWAIIANS, A Native Hawaiian Tribal Ohana, et al., Plaintiffs,**

v.

**Benjamin CAYETANO, In His Capacity as Governor of the State of Hawaii, et al., Defendants.**

Civ. No. 97–00303 HG.

United States District Court, D. Hawaii.

March 5, 1998.

Walter R. Schoettle, Honolulu, HI, for plaintiffs.

Margery Bronster, Attorney General, Randall Y.K. Young, Deputy Atty. General, Honolulu, HI, for defendants State of Hawaii, Cayetano, Wilson, Yuen, Kennison, McCrory, Nekoba, Matsumoto, Hayashida, Aiu, Amii, Arakaki, Fushikoshi, Hokama, Kibe, Kim, Rae, Wong, Tsuji, Yee, and Matsuda.

Sherry P. Broder, Honolulu, HI, for defendants Hee, DeSoto, Aiona, Keale, Apoliona, Beamer, Akana, Springer and Machado.

Margery Bronster, Attorney General, George K.K. Kaeo, Jr., Clayton Lee Crowell, Kumu B. Vasconcellos, Deputy Attys. General, Honolulu, HI, for defendants Watson, Agpalsa, Holt, Freitas, Kaulukukui, Kumalae, Nathaniel, Sheehan and Tomoso.

Theodore G. Meeker, Asst. U.S. Attorney, Honolulu, HI, for defendants Reno and Babbitt.

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND DENYING PLAINTIFFS' CROSS–MOTION FOR SUMMARY JUDGMENT

GILLMOR, District Judge.

### I. INTRODUCTION

This is the latest suit in litigation that Plaintiffs began at least 18 years ago. The Plaintiffs are The Hou Hawaiians, a Native Hawaiian Tribal Ohana; Doctor Nui Loa Price, aka Maui Loa, individually and in his capacity as Chief of the Hou Hawaiians; and Kamuela Price, individually and in his capacity as member of the Elder Council of the Hou Hawaiians (hereinafter collectively

"Plaintiffs" or "Hou Hawaiians"). Plaintiffs seek, pursuant to Title 42 U.S.C. § 1983, to enforce rights provided in Sections 4 and 5(f) of the Hawaii Admission Act. Previous similar suits have created a body of Ninth Circuit law that has shaped and narrowed many of the issues now before the Court.

Plaintiffs name four groups of defendants: (1) "the State Defendants," (2) "the Office of Hawaiian Affairs (OHA) Defendants," (3) "the Department of Hawaiian Homelands (DHHL) Defendants," and (4) "the Federal Defendants."

The State Defendants are the State of Hawaii; Benjamin Cayetano in his official capacity as Governor of the State of Hawaii; Michael Wilson, in his capacity as Director of the Department of Land and Natural Resources and Chairman of the Board of Land and Natural Resources; the individual members of the Board of Land and Natural Resources in their official capacities (Christopher Yuen, William Kennison, Lynn McCrory, Michael Nekoba, and Colbert Matsumoto); Kazu Hayashida, in his capacity as Director of the Department of Transportation of the State of Hawaii and Chairman of the Transportation Commission; and the individual members of the Commission on Transportation of the State of Hawaii in their official capacities (Julliet Aiu, Jan Amii, Walter Arakaki, Lester Fushikoshi, Dennis Hokama, Richard Kibe, Millicent Kim, David Rae, Alfred Wong, Norman Tsuji, and Wadsworth Yee); and Jerry Matsuda, in his capacity as Acting Head of the Airports Division of the Department of Transportation of the State of Hawaii.

The "OHA Defendants" (when the action was filed) are Clayton Hee, Trustee and Chairman of the Board of Trustees of OHA;[1] and the OHA Trustees in their official capacities (Adelaide DeSoto, Abraham Aiona, Moses Keale, Haunani Apoliona, Billie Beamer,[2] Rowena Akana, Hannah Springer, and Collette Machado).

The "DHHL Defendants" are Kali Watson, in his capacity as Director of DHHL and Chairman of the Hawaiian Homes Commis-

---

1. Hee is no longer the Chairman, although he is still an OHA trustee.

2. Beamer is now deceased, and her successor has not been named.

sion; and Members of the Hawaiian Homes Commission in their official capacities (Wonda Mae Agpalsa, Karen Holt, Rockne Freitas, Thomas Kaulukukui, Jr., Llewellyn Kumalae, Ann Nathaniel, Patricia Sheehan, and John Tomoso).

The "Federal Defendants" are Janet Reno, in her capacity as Attorney General of the United States of America; and Bruce Babbitt, in his capacity as Secretary of the United States Department of the Interior.

Each set of Defendants filed Motions to Dismiss, pursuant to Fed.R.Civ.P. 12(b), in lieu of answering the complaint. Plaintiffs responded by filing a Cross–Motion for Summary Judgment. The matter was heard on October 14, 1997. Walter Schoettle, Esq., and Kamuela Price, appeared for Plaintiffs. Deputy Attorney General Randall Young appeared for the State Defendants. Deputy Attorney General Clayton Crowell appeared for the DHHL Defendants. Jon Van Dyke, Esq., appeared for the OHA Defendants. Assistant United States Attorney Theodore G. Meeker appeared for the Federal Defendants. For the reasons set forth, the Court GRANTS Defendants' Motions to Dismiss and DENIES Plaintiffs' Cross–Motion for Summary Judgment.

## II. BACKGROUND

At issue are the "Section 4 Compact" and "Section 5(f) Trust" created by the Hawaii Admission Act of 1959, Public Law 86–3, 73 Stat. 4 ("Admission Act"), as well as the Hawaiian Homes Commission Act of 1920, 42 Stat. 108 ("HHCA"). Plaintiffs are a group of native Hawaiians of 50% or more Hawaiian ancestry who are eligible for 99–year leases of Hawaiian Home Lands "and other Native Hawaiian entitlements" as provided in Section 5(f) of the Admission Act and of the HHCA.

Section 4 of the Admission Act provides in pertinent part as follows:

As *a compact with the United States* relating to the management and disposition of the Hawaiian home lands, the Hawaiian Homes Commission Act, 1920, as amended, shall be adopted as a provision of the Constitution of [the State of Hawaii] [.] (emphasis added).

Section 5 of the Admission Act provides in pertinent part as follows:

(b) Except as provided in subsections (c) and (d) of this section, the United States grants to the State of Hawaii, effective upon its admission into the Union, the United States' title to all the public lands and other public property, and to all lands defined as "available lands" by section 203 of the Hawaiian Homes Commission Act, 1920, as amended[.]

. . . .

(f) The lands granted to the State of Hawaii by subsection (b) of this section and public lands retained by the United States under subsections (c) and (d) and later conveyed to the State under subsection (e), together with the proceeds from the sale or other disposition of any such lands and the income therefrom, *shall be held by [the State of Hawaii] as a public trust* for the support of the public schools and other public educational institutions, for the betterment of the conditions of native Hawaiians, as defined in the Hawaiian Homes Commission Act, 1920, as amended, for the development of farm and home ownership on as widespread a basis as possible[,] for the making of public improvements, and for the provision of lands for public use. Such lands, proceeds, and income shall be managed and disposed of for one or more of the foregoing purposes in such manner as the constitution and laws of [Hawaii] may provide, and *their use for any other object shall constitute a breach of trust for which suit may be brought by the United States* . . . . (emphasis added).

In turn, the Hawaii State Constitution was amended in 1978 to, among other things, require the State to hold Section 5(b) lands ("excluding therefrom lands defined as 'available lands' by Section 203 of Hawaiian Homes Commission Act, 1920, as amended") "as a public trust for native Hawaiians and the general public." Haw. Const. Art. XII, § 4 ("Section 4").

The Hawaii Constitution was also amended in 1978 to create the Office of Hawaiian

Affairs ("OHA"). Under the Hawaii Constitution, OHA "shall hold title to all the real and personal property now or hereafter set aside or conveyed to it which shall be held in trust for native Hawaiians and Hawaiians." Haw. Const., Art. XII, § 5.[3] Under the State Constitution, the OHA Board of Trustees shall "manage and administer the proceeds from the sale or other disposition of the lands, natural resources, minerals and income derived from whatever sources for native Hawaiians and Hawaiians, including all income and proceeds from that pro rata portion of the trust referred to in section 4 of this article for native Hawaiians[.]" *Id.,* Art. XII, § 6. By statute, that "pro rata portion" is 20%. *See* Haw.Rev.Stat. § 10–13.5 ("Twenty per cent of all revenue derived from the public land trust shall be expended by [OHA] for the betterment of the conditions of native Hawaiians"). Thus, OHA, among other things, manages and administers 20% of all revenue derived from certain Section 5(b) lands for the betterment of the conditions of Hawaiians and native Hawaiians.

In 1995, the Hawaii Legislature passed Act 14, 1995 Haw.Sp.Sess.Laws ("Act 14"), to settle claims regarding the HHCA arising prior to July 1, 1988.[4] Among other things, Act 14 established a Hawaiian home lands trust fund and required the State to pay $600,000,000.00 into the trust fund ("twenty annual deposits of $30,000,000, or their discounted value equivalent"). *See* Act 14, § 6. Act 14 purported to be:

> in full satisfaction and resolution of all controversies at law and in equity, known or unknown, now existing or hereafter arising, established or inchoate, arising out of or in any way connected with the management, administration, supervision or the trust, or disposition by the State or any governmental agency of any lands or interests in land which are or were or are alleged to have been Hawaiian home lands, or to have been covered by the HHCA arising between August 21, 1959 and July 1, 1988.

Act 14, § 4. The Legislature stated its intent in passing Act 14, in part, as follows:

> ... it is the intent of the legislature that if the State is alleged to be liable [ ] for claims of breaches of the Hawaiian home lands trust prior to statehood, this Act shall dispose of and resolve those claims against the State as well.

Act 14, § 1.

In their Complaint, Plaintiffs allege a variety of breaches of trust by the State and DHHL Defendants in management and implementation of the HHCA. Although their Complaint makes claims for compensatory damages,[5] they primarily seek injunctive relief. Plaintiffs seek to compel the Defendants to expend Section 5(f) monies on HHCA purposes first, before expending monies on other purposes provided for in the Admission Act. In particular, they ask the Court to do the following:

> A. Enjoin and restrain STATE DEFENDANTS[6] from expending any of the income or proceeds from the TRUST LANDS for any purpose other than providing each and every eligible beneficiary of § 5(f) and HHCA who wants one with a homestead as provided by HHCA and compensating him or her for the unreasonable delay in providing the same, giving priority to the eldest and most needy; or

---

3. The term "Hawaiian" refers to "any descendant of the aboriginal peoples inhabiting the Hawaiian Islands which exercised sovereignty and subsisted in the Hawaiian Islands in 1778, and which peoples thereafter have continued to reside in Hawaii." Haw.Rev.Stat. § 10–2. The term "native Hawaiian" refers to "any descendant of not less than one-half part of the races inhabiting the Hawaiian Islands previous to 1778, as defined by the Hawaiian Homes Commission Act, 1920, as amended[.]" *Id.*

4. In 1988, the Legislature passed the Native Hawaiian Trusts Judicial Relief Act, Act 395, 1988 Haw.Sess.Laws, which provided a limited waiver of sovereign immunity for claims arising after July 1, 1988. *See* Haw.Rev.Stat. ch 673.

5. Indeed, at oral argument Plaintiffs essentially withdrew claims for damages. In this Order, however, the Court addresses whether the Complaint as filed states claims upon which relief can be granted.

6. For these purposes, Plaintiffs define "STATE DEFENDANTS" as including the DHHL and OHA Defendants.

B. In the alternative, enjoin and restrain STATE DEFENDANTS from expending any of the income or proceeds from the TRUST LANDS for any purpose other than to satisfy the $600,000,000.00 settlement owed by Defendant STATE OF HAWAII to the Defendant DHHL for prior breaches of trust and to satisfy the claims of individual beneficiaries allowed by the claims review panel under H.R.S. Chapter 674, until all such claims have been paid in full; or

C. In the alternative, mandate and require Defendants RENO and BABBITT to pursue this litigation to enforce the compact and trusts established in §§ 4 and 5(f) of the Hawaii Admission Act by providing every eligible beneficiary who wants one with a homestead as provided by HHCA and compensating him or her for the unreasonable delay in providing the same, giving priority to the eldest and most needy[.]

Complaint at 13–14.

### III. DISCUSSION

The Ninth Circuit has already decided many of the issues in this case. Previous suits seeking to enforce the Admission Act and the HHCA (including a number of suits between these same parties) have created an extensive body of applicable Ninth Circuit law.

A. *Plaintiffs Have Standing to Enforce Rights Provided in the Admission Act Under Section 1983.*

Plaintiffs bring suit under 42 U.S.C. § 1983. Section 1983 provides, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law,

suit in equity, or other proper proceeding for redress[.]

▆ The Ninth Circuit has repeatedly held that Sections 4 and 5(f) of the Admission Act create a federal "right" enforceable under Section 1983. *See Keaukaha–Panaewa Community Ass'n v. Hawaiian Homes Comm'n,* 739 F.2d 1467, 1472 (9th Cir.1984) (*Keaukaha II* ); *Price v. State,* 764 F.2d 623, 628 (9th Cir.1985) (*Price I* ); *Ulaleo v. Paty,* 902 F.2d 1395, 1397 (9th Cir.1990); *Price v. Akaka,* 3 F.3d 1220, 1224–25 (9th Cir.1993) (*Akaka II* ). The right arises both as a trust obligation "rooted in federal law" and as an obligation under a federal-state compact. *See, e.g., Price I,* 764 F.2d at 628–29.

The Admission Act creates a right enforceable under Section 1983 even though the Ninth Circuit has also held that the Admission Act creates no private cause of action.[7] In *Keaukaha II* and *Akaka II,* the Ninth Circuit relied on the principle enunciated in *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980) that the lack of an implied right of action in a federal act does not foreclose private actions under Section 1983. *See Keaukaha II,* 739 F.2d at 1470–71; *Akaka II,* 3 F.3d at 1224–25. The Ninth Circuit further determined that even if Section 5(f) allows the United States to bring an action for breaches of trust, this "public enforcement" remedy does not demonstrate congressional intent to preclude a private remedy under Section 1983. *See Keaukaha II,* 739 F.2d at 1470–71 (applying *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981)). Indeed, the *lack* of a private cause of action in a statute remains a major factor in determining whether federal rights may be enforced under Section 1983. The Supreme Court recently reaffirmed this general principle in *Blessing v. Freestone,* 520 U.S. 329, ——, 117 S.Ct. 1353, 1363, 137 L.Ed.2d 569 (1997).

▆ Additionally, the Ninth Circuit has held that the Hou Hawaiians have standing to challenge the use of Section 5(f) lands, in particular, and to enforce Section 5(f), in general. *See Price I,* 764 F.2d at 630 (hold-

---

**7.** *See Keaukaha–Panaewa Community Ass'n v. Hawaiian Homes Comm'n,* 588 F.2d 1216, 1227 (9th Cir.1978) (*Keaukaha I* ) (no private cause of action to enforce Admission Act).

ing that the Hou Hawaiians have standing to seek prospective injunctive relief against the Governor); *Price v. Akaka,* 928 F.2d 824, 827 n. 2 (9th Cir.1991) (*Akaka I* ) (holding that "Price, as a native Hawaiian, has standing to seek redress for past violations of § 5(f) even though that redress may not necessarily benefit native Hawaiians").

In sum, Sections 4 and 5(f) create rights enforceable under Section 1983 and Plaintiffs have standing to enforce such rights.

B. *Plaintiffs' Damages Claims Against the State and DHHL Defendants are Barred by the Eleventh Amendment*

 The Ninth Circuit has also repeatedly held that, even if Plaintiffs have standing and even if the Admission Act confers rights enforceable under Section 1983, the Eleventh Amendment bars such claims directly against the State of Hawaii. The Ninth Circuit held that the Admission Act's authorization for the United States to bring suit against the State was not an explicit waiver of Hawaii's Eleventh Amendment immunity. *See Price I,* 764 F.2d at 629.[8] "[Plaintiffs] have attempted to sue the State, as they have done before. It is pellucid that they cannot, for the eleventh amendment prohibits it. We have told them that before. We have told others the same thing. Nothing has changed." *Price v. State,* 921 F.2d 950, 958 (9th Cir.1990) (citations omitted) (*Price II* ). Moreover, it is well-settled that neither a state nor state actors sued in their official capacities are "persons" for purposes of Section 1983. *See, e.g., Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

Accordingly, the Court DISMISSES any claims for damages against the State of Hawaii, as well as claims for damages against the State Defendants and the DHHL Defendants in their official capacities.

C. *Prospective Injunctive Relief*

 Plaintiffs, however, emphasize that they primarily seek prospective injunctive relief based upon the *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), exception to Eleventh Amendment immunity. Under the *Ex Parte Young* doctrine, a suit brought against a state official in his or her official capacity for prospective injunctive relief challenging a violation of federal law is not barred by the Eleventh Amendment. *See Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 102, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). If a plaintiff asks a federal court to enjoin a state official's future unconstitutional conduct, there is no Eleventh Amendment bar because unconstitutional actions by state officials cannot be authorized by a state. *See Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The doctrine allows "federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.'" *Papasan v. Allain,* 478 U.S. 265, 277, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (citation omitted). A plaintiff may not, however, seek retroactive monetary relief against a state official for past allegedly unconstitutional behavior. *See Edelman,* 415 U.S. at 666–67.

 The difference between retrospective and prospective relief is often blurred. *See Papasan,* 478 U.S. at 278. Generally, "[r]elief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred[.]" *Id.* (citations omitted). Prospective relief is not barred by the Eleventh Amendment even if it has a substantial effect on the state treasury. *See id.*

Under this doctrine, the Ninth Circuit has specifically held that "the Hou may properly seek prospective injunctive relief against Governor Ariyoshi in his [official] capacity[.]" *Price I,* 764 F.2d at 630. The Ninth Circuit

---

8. Moreover, under *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 72, 116 S.Ct. 1114, 1131, 134 L.Ed.2d 252 (1996) (holding that "[e]ven when the Constitution vests in Congress complete lawmaking authority over a particular area, the Eleventh Amendment prevents congressional au-

thorization of suits by private parties against unconsenting States"), even if the United States attempted to waive Hawaii's Eleventh Amendment immunity in the Admission Act, the State of Hawaii would likely still retain such immunity.

has noted, for example, that the Hou Hawaiians "may still call officials to account when funds are actually diverted from section 5(f) purposes in violation of the [Admission] Act." *Price II*, 921 F.2d at 959. Accordingly, the dispositive question is whether Plaintiffs are actually seeking prospective relief, or, whether the relief sought is retrospective and therefore barred by the Eleventh Amendment.

■■■ Here, aside from monetary relief, Plaintiffs seek to enjoin the State "from expending any of the income or proceeds from the TRUST LANDS for any purpose other than providing each and every eligible beneficiary of § 5(f) and HHCA who wants one with a homestead as provided by HHCA." (Complaint at 13). Alternatively, Plaintiffs seek to enjoin the state "from expending any of the income or proceeds from the TRUST LANDS for any purpose other than to satisfy the $600,000,000.00 settlement owed by Defendant STATE OF HAWAII to the Defendant DHHL for prior breaches of trust and to satisfy the claims of individual beneficiaries allowed by the claims review panel under H.R.S. Chapter 674, until all such claims have been paid in full." (*Id.*)

In *Ulaleo v. Paty*, 902 F.2d 1395 (9th Cir.1990), plaintiffs Kaolelo Ulaleo and the Pele Defense Fund ("Ulaleo") challenged an exchange by the Board of Land and Natural Resources of some 27,000 acres of Section 5(f) lands for some 25,000 acres of Campbell Estate lands (apparently to be used for geothermal wells), as a trust violation. Ulaleo characterized the violation as an ongoing trust violation, and sought return of the Section 5(f) lands to the trust corpus. The Ninth Circuit found the relief sought to be retrospective in nature and thus the claim was barred by the Eleventh Amendment. *See* 902 F.2d at 1399–1400. The court relied heavily on *Papasan*, as does the State here.

In *Papasan*, the United States gave lands to the State of Mississippi for use to benefit certain schools. Mississippi sold the lands and invested the money in railroads, which were destroyed in the Civil War. Although the trust corpus was destroyed, Mississippi had paid money to the schools as interest on the original value of the corpus. Papasan

sought additional payment. *See* 478 U.S. at 278–79. The Supreme Court characterized the relief sought as retrospective in nature, reasoning as follows:

> The distinction between a continuing obligation on the part of the trustee and an ongoing liability for past breach of trust is essentially a formal distinction of the sort we rejected in [*Edelman v. Jordan*] ....... We discern no substantive difference between a not-yet-extinguished liability for a past breach of trust and the continuing obligation to meet trust responsibilities asserted by the petitioners. In both cases, the trustee is required, because of the past loss of the trust corpus, to use its own resources to take the place of the corpus or the lost income from the corpus.... It is in substance the award ... of "an accrued monetary liability"

478 U.S. at 280–81 (citations omitted).

Here, similar to *Papasan*, Plaintiffs are essentially seeking compensation for past breaches and payment for "an accrued monetary liability." Plaintiffs ask this Court to compel the State Defendants to spend 5(f) funds on only one (Hawaiian Homelands) of the five purposes provided for in the Admission Act, in order to compensate for past breaches of trust.

Similarly, in *Han v. United States Department of Justice*, 45 F.3d 333, 338 (9th Cir. 1995), a different group of plaintiffs sought to enforce the Admission Act where the State approved leases of Hawaiian home lands—which were subject to the HHCA—to third-parties (i.e., non-native Hawaiians). The Ninth Circuit held that a suit seeking to enjoin the State from violating trust duties was barred by the Eleventh Amendment. The plaintiffs were primarily seeking redress for past trust violations, and there was no allegation that the State was likely to approve similar third-party agreements in the future. *See* 45 F.3d at 338.

Finally, regardless of an Eleventh Amendment bar, the State Defendants rely heavily on *Price II*, 921 F.2d at 955–57, which does weigh heavily towards dismissal. In *Price II*, the Hou Hawaiians brought suit against the State for, *inter alia*, "fail[ing] to keep the

ceded lands, and the income from those lands, segregated from other state assets and income" and "scatter[ing] those lands among various departments and agencies of the State[.]" 921 F.2d at 954. In affirming the Hawaii District Court's dismissal, the Ninth Circuit reasoned in part that it could not "require that the State adopt any particular method and form of management for the ceded lands." *Id.* at 955–56. It stated that "it is not for us to declare that certain methods of holding, managing, and accounting for the ceded lands and income must be followed by the State and its officials." *Id.* at 956. The Court certainly did not foreclose future suits, as it recognized that this "does not mean that the State can do what it likes with the property and the income [of the ceded lands]." *Id.* Rather, litigation would have to focus on "some particular diversion" to determine whether the State was violating the 5(f) trust. *Id.*

 Here, however, there is no allegation of a "particular diversion" of lands or revenues that violate the terms of Section 5(f) of the Admission Act. Rather, Plaintiffs seek to compel the State to spend Section 5(f) funds on only one (Hawaiian home lands) of the five purposes provided for in the Admission Act. They do not allege that the State is diverting Section 5(f) funds to *non*–5(f) uses. They do not allege, for example, that Defendants are

diverting Section 5(f) funds to the State's general fund. Essentially, they seek to change the State's priorities for spending Section 5(f) funds among different 5(f) purposes; they seek to dictate "methods of holding, managing, and accounting for the ceded lands." The Ninth Circuit held in *Price II* that granting such relief is not proper.

Accordingly, to the extent Plaintiffs' claims are not barred by the Eleventh Amendment, *Price II* is dispositive. Plaintiffs have not stated a claim of a specific illegal diversion of funds, or threat of other violation of trust res.[9]

### D. Claims against the OHA Defendants

 Notably, the OHA Defendants have not invoked Eleventh Amendment immunity. Their memorandum does not join the State and DHHL Defendants in invoking it, and they specifically chose not to invoke it when asked at oral argument.[10] If OHA is considered a "state agency," then suits against the OHA trustees in their "official capacities" would be considered suits against the State for Eleventh Amendment purposes. OHA explains that it is a unique entity combining features of a public trust, government agency, and an independent entity. On the other hand, OHA has also not argued that it is *not* a "state agency" for purposes of Section 1983. If OHA were truly not a state

---

9. Moreover, to the extent the relief sought is not purely retrospective, a recent Supreme Court case appears to require a court to analyze the extent to which an action under *Ex parte Young* might interfere with a state's "sovereign" interests. *See Idaho v. Coeur d'Alene Tribe,* — U.S. —, —, 117 S.Ct. 2028, 2038–40, 138 L.Ed.2d 438 (1997). The Supreme Court reasoned that there must be "a careful balancing and accommodation of state interests when determining whether the *Young* exception applies in a given case." — U.S. at —, 117 S.Ct. at 2038.

The case involved an indian tribe alleging an on-going violation of its property rights (control over lands submerged by Idaho's Lake Coeur d'Alene) protected by federal law. The tribe sought prospective injunctive relief under *Ex parte Young.* The Court ultimately determined that, because the suit involved particular interests—similar to Hawaii's interests in having control over ceded land revenues—affecting Idaho's "sovereignty," the *Ex parte Young* exception did not apply. The Eleventh Amendment barred the suit. The Court reasoned in part that "[t]he

Eleventh Amendment's background principles of federalism and comity need not be ignored in resolving these conflicting preferences [between state and federal court]. The *Young* exception may not be applicable if the suit would 'upset the balance of federal and state interests that it embodies.' " — U.S. at —, 117 S.Ct. at 2038 (citation omitted). Given, however, the existing Ninth Circuit authority requiring dismissal, this Court need not decide whether the instant action is barred under *Idaho v. Coeur d'Alene Tribe.*

10. Waiver of Eleventh Amendment immunity must be unequivocal and express. *See Actmedia, Inc. v. Stroh,* 830 F.2d 957, 963 (9th Cir.1986). The test is " 'so stringent that it is quite unlikely that very many explicit state waivers of Eleventh Amendment immunity will be found.' " *Micomonaco v. State of Washington,* 45 F.3d 316, 321 (9th Cir.1995) (citation omitted). Waiver must be explicit in a statute and it is unlikely that an attorney can waive Eleventh Amendment immunity. *See Wilson–Jones v. Caviness,* 99 F.3d 203, 206 n. 1 (6th Cir.1996), *amended on denial of r'hrg,* 107 F.3d 358 (6th Cir.1997).

agency, it could argue that its actions are not "under color of state law" as required to set forth a cause of action under Section 1983.[11] The parties also have not addressed the related question whether OHA is a "person" for purposes of Section 1983. *Compare Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (municipalities and other local governing bodies are persons within the meaning of Section 1983) *with Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (states are not persons who can be sued in a Section 1983 suit).

■ The Court, however, need not decide whether OHA is a state agency for purposes of sovereign immunity, whether it acts "under color of state law" for purposes of Section 1983, or whether it is a "person" for purposes of Section 1983. Assuming without deciding that OHA is amenable to suit, Plaintiffs' Complaint would still fail to state a Section 1983 claim against OHA under *Price II.* As set forth earlier, because Plaintiffs have failed to state a claim of a specific illegal diversion of funds, or threat of other violation of trust res, there can be no "deprivation of any rights ... secured by the Constitution and laws" for purposes of Section 1983. *See Price II,* 921 F.2d at 956. That is, even though Sections 4 and 5(f) create "rights" enforceable under Section 1983 (*see, e.g., Price I,* 764 F.2d at 628–29) the instant complaint fails to state a claim for a *deprivation* of those rights.[12]

### E. *The Federal Defendants.*

■ Similarly, Plaintiffs' Complaint fails to state any cognizable claims for damages against the Federal Defendants. It is funda-mental that Section 1983 is inapplicable to the United States. *See, e.g., Daly–Murphy v. Winston,* 837 F.2d 348, 355 (9th Cir.1988).

Plaintiffs also seek by mandamus under 28 U.S.C. § 1361 to compel the United States to bring suit against the State of Hawaii. *See* Section 5(f) ("their use [of lands granted to the State] for any other object shall constitute a breach of trust *for which suit may be brought by the United States.*") (emphasis added). Section 1361 provides:

The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

■ "Mandamus is an extraordinary remedy." *Barron v. Reich,* 13 F.3d 1370, 1374 (9th Cir.1994) (citation omitted). It is appropriate "when an official's duty to act is ministerial in nature and so plain as to be free from doubt." *Silveyra v. Moschorak,* 989 F.2d 1012, 1014 (9th Cir.1993). Merely because an official's duty is discretionary, however, "does not necessarily end the inquiry." *Barron,* 13 F.3d at 1376. When—as with section 5(f)—an official's responsibilities are not ministerial, but rather are discretionary in nature,

Mandamus may lie if statutory or regulatory standards delimiting the scope or manner in which such discretion can be exercised ... have been ignored or violated, or if the federal defendants failed entirely to carry out statutory purposes.

*Han,* 45 F.3d at 337–38 (internal quotation marks and citations omitted).

---

11. OHA argues that the Ninth Circuit's decision in *Akaka II* requires dismissal. This argument, however, cuts both ways because *Akaka II* dealt with whether the OHA Defendants were entitled to qualified immunity. Indeed, the Ninth Circuit implicitly considered OHA to be a state agency in *Akaka I,* wherein it reversed a dismissal of the Hou Hawaiians' Section 1983 claims against OHA defendants in their individual capacities. *See* 928 F.2d at 827–28. On remand, the Hawaii District Court found that the OHA defendants, sued in their individual capacities, were entitled to qualified immunity. That decision was upheld in *Akaka II,* 3 F.3d at 1226. Here, however, the OHA Defendants are being sued in their "offi-cial" capacities. Plaintiffs apparently seek to compel OHA itself (and other Defendants) to spend Section 5(f) monies on Hawaiian home lands before spending such monies on other Section 5(f) purposes.

12. *Cf.* Eric K. Yamamoto et al., *Courts and the Cultural Performance: Native Hawaiians' Uncertain Federal and State Law Rights to Sue,* 16 U.Haw.L.Rev. 1, 39–50 (1994) (observing that the opening left by prior Ninth Circuit law to enforce the HHCA under Section 1983 has been narrowed by subsequent Ninth Circuit opinions).

The plaintiffs in *Han* —as do Plaintiffs in this case—sought a writ of mandamus compelling the United States Attorney General to file an action against the State of Hawaii to enforce the Admission Act. The Ninth Circuit, however, upheld the Hawaii District Court's dismissal of the mandamus claim. The Ninth Circuit held that section 5(f) is precatory. "[T]he United States undertook no obligation to bring suit to enforce the trust; section 5(f) provides that the United States *may* bring such an action, not that it *must* do so." 45 F.3d at 337 (emphasis in original). Accordingly, mandamus could not lie. *See id.* Here, even assuming as true the allegations in Plaintiffs' Complaint, the situation regarding the HHCA has not changed appreciably since the Ninth Circuit decided *Han.* Under binding Ninth Circuit precedent, then, this Court cannot compel the United States to bring suit to enforce the HHCA. *See id.*

F. *Plaintiffs' Cross–Motion for Summary Judgment.*

Because the Court is granting the Defendants' Motions to Dismiss, it need not reach the merits of Plaintiffs' Cross–Motion for Summary Judgment. If it did, however, the Court would be required to summarily deny it. Defendants have yet to file answers. Discovery has not commenced. Even if the Complaint stated a claim sufficient to withstand a Fed.R.Civ.P. 12(b)(6) motion, granting summary judgment in favor of Plaintiffs would be premature. Plaintiffs' Cross–Motion is DENIED.

## IV. CONCLUSION

Plaintiffs have persistently sought to enforce the HHCA and the Admission Act. Although their cause may be laudable, this suit is barred by the Eleventh Amendment and prior Ninth Circuit authority. It may be possible to state a Section 1983 claim for prospective injunctive relief for a deprivation of rights provided in the Admission Act, but the instant Complaint fails to state such a claim.

For the foregoing reasons, it is hereby ordered that:

(1) Defendants' Motions to Dismiss are GRANTED;

(2) Plaintiffs' Cross–Motion for Summary Judgment is DENIED; and (3) Judgment shall enter in favor of Defendants.

IT IS SO ORDERED.